**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| ABRAHAM LUBLIN )<br>)<br>Plaintiff, )<br>vs. )<br>)<br>AMERICAN AUTOMOBILE )<br>ASSOCIATION OF NORTHERN )<br>CALIFORNIA, NEVADA & UTAH, )<br>)<br>Defendant. )<br>) | Case No.: 2:17-cv-00021-GMN-PAL<br><br>**ORDER** |

Pending before the Court is the Motion to Compel Arbitration, (ECF No. 15), and Motion to Dismiss, (ECF No. 16), filed by Defendant American Automobile Association of Northern California, Nevada & Utah ("Defendant"). Plaintiff Abraham Lublin ("Plaintiff") filed a response, (ECF No. 18), and Defendant filed a reply, (ECF No. 24). For the reasons set forth herein, Defendant's motions are **DENIED**.

**I.     BACKGROUND**

This case concerns allegations that Defendant, as Plaintiff's employer, engaged in discriminatory and tortious conduct against Plaintiff. (Am. Compl., Ex. B to Pet. of Removal, ECF No. 1). Plaintiff began his employment in May 2010 as an insurance agent at Defendant's Las Vegas office. (*Id.* ¶ 3). While employed, Plaintiff alleges that he discovered that Defendant and other employees were engaged in unlawful activity regarding Defendant's insurance sales. (*Id.* ¶ 4). Specifically, Plaintiff alleges that Defendant employed "individuals as agents who were not licensed as sales agents" and sold "motor club" memberships designed to automatically renew without the customer's knowledge. (*See id.*). Plaintiff further alleges that Defendant "did not have the necessary or proper license with the Nevada Division of

Insurance." (*Id.*). On September 15, 2014, Plaintiff emailed Division of Insurance investigator Nixon Medina regarding these violations. (*Id.* ¶ 5).

On October 1, 2014, Plaintiff claims that the office manager, Erick Gonzales, called the Las Vegas Metropolitan Police Department and "made false accusations against Plaintiff." (*Id.* ¶ 6). A few days later, Defendant terminated Plaintiff's employment, purportedly because Plaintiff "failed to meet [his] sales numbers with prior warnings." (*Id.* ¶¶ 7, 8). Thereafter, Defendant allegedly hired an unlicensed individual working for a security company to "provide 24-hour surveillance" of Plaintiff. (*Id.* ¶ 9). Based on the above allegations, Plaintiff raises claims for: (1) tortious retaliatory discharge; (2) intentional infliction of emotional distress; (3) negligent supervision; (4) race discrimination under Title VII; (5) national origin discrimination under Title VII; and (6) retaliatory discharge under Title VII.

In the instant motions, Defendant argues that the Court should compel arbitration of these claims in accordance with the parties' arbitration agreement, which Plaintiff allegedly signed after corporate restructuring on June 21, 2011. (*See* Mot. to Compel 6:24–25, ECF No. 15). Defendant further asserts that this case should be stayed or dismissed pending arbitration pursuant to the Federal Arbitration Act. (*See* Mot. to Dismiss 8:1–2, ECF No. 16).

## II. <u>LEGAL STANDARD</u>

Section 2 of the Federal Arbitration Act (the "FAA") provides that:

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. "In enacting § 2 of the [FAA], Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration." *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984). Courts place arbitration agreements "upon the same footing as

other contracts." *Volt Info. Sciences, Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989).

Under the FAA, parties to an arbitration agreement may seek an order from the Court to compel arbitration. 9 U.S.C. § 4. The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985). Thus, the Court's "role under the [FAA] is . . . limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Lee v. Intelius, Inc.*, 737 F.3d 1254, 1261 (9th Cir. 2013). If a district court decides that an arbitration agreement is valid and enforceable, then it should either stay or dismiss the claims subject to arbitration. *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1276-77 (9th Cir. 2006).

## III.  DISCUSSION

Defendant argues that the Court should compel arbitration of Plaintiff's claims pursuant to the agreement between the parties. (Mot. to Compel 8:1–2). In support of this argument, Defendant attaches both the arbitration agreement and employment offer that were allegedly provided to Plaintiff in June 2011. (*See* Agreements, Exs. A, C to Mot. to Compel). In response, Plaintiff argues that he was "never presented, or otherwise shown, a copy of [either] document during [his] employment," and to the best of his recollection, he was never "presented a copy of any document that stated it was an agreement to arbitrate." (Pl.'s Aff. ¶¶ 5–7, Ex. 1 to Pl.'s Resp., ECF No. 18-1). While both documents appear to bear Plaintiff's signature, Plaintiff asserts that he did not sign either document or else authorize the use of his electronic signature. (*Id.*).

Where there is doubt as to whether an agreement to arbitrate exists, "[o]nly when there is no genuine issue of fact concerning the formation of the agreement should the court decide as a

matter of law that the parties did or did not enter into such an agreement." *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1141 (9th Cir. 1991) (quoting *Par–Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51, 54 (3d Cir. 1980). "[W]hen considering a motion to compel arbitration which is opposed on the ground that no agreement to arbitrate had been made between the parties, [the court] should give to the opposing party the benefit of all reasonable doubts and inferences that may arise." *Id.* "The court cannot require a party to arbitrate a dispute unless the party has agreed to do so." *United Steelworkers of Am v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960).

Here, Defendant argues that Plaintiff's sworn affidavit contesting arbitration is insufficient to invalidate the agreement.[1] (Def.'s Reply 5:15–17, ECF No. 24). In support of this argument, Defendant cites to *Cadaval v. Dean Witter Reynolds, Inc.*, 703 F. Supp. 922, 924 (S.D. Fla. 1989) (finding that a plaintiff's assertion that he had "no recollection" of signing an arbitration agreement was insufficient to prevent its enforcement). Unlike the party in *Cadaval*, however, Plaintiff does not merely speculate that he did not sign the documents based on a lack of recollection. Rather, Plaintiff explicitly states that he did not sign the documents containing the arbitration provision. (*See* Pl.'s Aff. ¶¶ 5–7, Ex. 1 to Pl.'s Resp.). While the evidence is minimal, the Court finds that Plaintiff has sufficiently raised an issue of material fact regarding the formation of the arbitration agreement.

Defendant correctly notes that "[n]umerous courts have held that a system in which an employee must log on to an electronic, password-protected system in order to acknowledge the employer's arbitration agreement is reliable and sufficient to establish the plaintiff assented to the Arbitration Agreement." (Def.'s Reply 5:23–25). Yet, Defendant fails to provide any

---

[1] Defendant additionally argues that this issue should be decided by an arbitrator pursuant to the delegation clause in the agreement. (Def.'s Reply 4:25–28). However, "a party who contests the making of a contract containing an arbitration provision cannot be compelled to arbitrate the threshold issue of the existence of an agreement to arbitrate." *Three Valleys Mun. Water Dist.*, 925 F.2d at 1140. Here, Plaintiff contests the formation of the entire agreement. Accordingly, the Court rejects Defendant's argument.

evidence pertaining to such an electronic system or otherwise provide evidence establishing chain of custody. Moreover, while a plaintiff's conduct can constitute consent to an arbitration agreement even absent a signature, Defendant fails to offer evidence to counter Plaintiff's assertion that he "was never presented, or otherwise shown, a copy of" the arbitration agreement or employment offer. *See Tallman v. Eighth Jud. Dist. Ct.*, 359 P.3d 113, 119 (Nev. 2015). To require a plaintiff to arbitrate without showing that he was even aware of the agreement would be inconsistent with the "first principle" of arbitration that "a party cannot be required to submit [to arbitration] any dispute which he has not agreed so to submit." *See Three Valleys Mun. Water Dist.*, 925 F.2d at 1142.

As a genuine issue of material fact exists as to the formation of the arbitration agreement, the Court cannot determine at this time that the parties agreed to arbitrate. The Court grants Defendant leave to file a renewed motion to compel arbitration within thirty (30) days of this Order should sufficient evidence to address the issues raised herein become available.

### IV. CONCLUSION

**IT IS HEREBY ORDERED** that Defendant's Motion to Compel, (ECF No. 15), is **DENIED without prejudice**.

**IT IS FURTHER ORDERED** that Defendant's Motion to Dismiss, (ECF No. 16), is **DENIED without prejudice**.

**IT IS FURTHER ORDERED** that, consistent with the foregoing, Defendant shall have (30) days from the issuance of this Order to file a renewed motion to compel arbitration.

**DATED** this __31__ day of August, 2017.

_____
Gloria M. Navarro, Chief Judge
United States District Court